## COPLAND v NEWCOMB et

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 18020. Decided Dec. 23, 1940.

644

James C. Connell, Cleveland, Howell Leuck, Cleveland, for appellant David Copland.

Adrian G. Newcomb, Cleveland; Isadore Crossman, Cleveland; Thomas A. Burke, Jr., for appellees.

SHERICK, PJ., LEMERT & MONTGOMERY, JJ. (5th Dist.), sitting.

**OPINION**

By SHERICK, PJ.

We are asked by this appeal to reverse the judgment of disbarment of Municipal Judge David Copland, who was found guilty of having written and caused to be published in a legal journal an opinion in a fictitious cause purporting to have been heard and decided by him when he well knew that its published report would be relied upon by lawyers and judges as the decision of a court in a litigated controversy.

He was also charged with, and found guilty of having answered a questionnaire from the Cleveland Bar Association which represented that he had attended the Law School of Columbia University for three years and was admitted to the Bar in New York in 1917, when in fact, both representations were untrue and were made with intent to deceive the members of the Bar Association.

These charges are, of course, predicated upon §1707 GC, and the assertion that these acts "constitute misconduct or unprofessional conduct in office involving moral turpitude."

Reversal is sought upon two grounds. First, that the specifications, if true, do not charge misconduct or unprofessional conduct in office involving moral turpitude. Second, that inasmuch as he is the incumbent of a judicial office he can only be disciplined by impeachment.

It will first be observed that these charges were not only proven but brazenly admitted to be true. With respect to the published opinion, appellant states that it was his purpose to edify the Bench and Bar by his masterly thesis published under the guise of an authentic court finding. If his purpose reached accomplishment, some Court, lawyer and litigant, relying upon precedent, might be lead thereby to his sorrow. This legal Paul Bunyon did not possess the candor of him whom he would emulate but by deception and concealment would foist his legal views upon his brethren as the judgment of a court of law. His effrontery in so doing is monstrously astounding. He would mislead the members of his profession, the courts and the people who so graciously elected him. His acts subject the legal profession and the courts to contempt and ridicule, when his every move should have been to uphold their dignity. Surely this highly reprehensible act involves moral turpitude. When one under color of an of-

fice practices deception and deceit that may lead to the harm of innocent persons, it is highly unethical and a grievous wrong which merits punishment.

But it is said that if all this be true it was not done "in office"; that is, as an attorney at law. He would wrap his judicial robe about him and steal away from the nightmare into which his dream degenerated. He now asks a reviewing court to wash his soiled gown and absolve him of all censure because he bears the title, Judge. We believe the office of an attorney at law should be, and is one of high standing. It is granted to one for life, while that of a Judgeship is but for a few short years. They are not incompatible for one in this State must hold the office of an attorney at law for a number of years before he can be elevated to the Bench.

Did Copland write and publish this fictitious decision as a part of his official duty? The answer is an emphatic negative. He says that he employed this means for the purpose of stating his personal views on a hypothetical legal question for the benefit of the legal profession and the exaltation of his ego. If he did not act as a Judge in so doing, for there was nothing that required judicial inquiry, he acted in some other capacity, which was that of a lawyer writing for the enlightenment of his profession. Surely it was not the act of a layman.

We perceive no special sanctity which should surround the unofficial acts of a Judge. It is not the personal habits of a Judge that are complained of with respect to his Judgeship, but his act done as a member of the Bar under color of his office which he holds for the time being.

Sec. 1707 GC, is the authority given to lawyers and courts whereby it may protect the people from unscrupulous persons who have inad- vertently been admitted to the practice of law. It has a further purpose in that it affords a vehicle for the legal profession to keep its skirts clean and purge itself of those of its members who will not subscribe to the ethics of the professions. It also affords an alternative way to preserve and uphold the dignity of the courts and respect for law.

To hold that **Art. II, §23 and §24 of the Ohio Constitution** prescribes an exclusive way for correction of judicial officers is to say that lawyers elected to the Bench are immune, to their own profession's ethics, and that the Bar must sit supine until the Legislature impeaches him. If that body refuses or fails to impeach it follows that a Judge can be guilty of misconduct or unprofessional conduct in his office as an attorney that involves moral turpitude and still remain a lawyer and deny the bar its inherent right to require one of its number to abide by his oath of office. **Sec. 38** of the same Article belies the appellant's claim.

Appellant admits that his answers to the Bar inquiry were false. He admits that he never attended the Columbia Law School and that he was not admitted to practice in New York until 1924 and then upon motion through comity. He testified that he obtained his legal education in a law office. He says it was his purpose to build up his legal experience and quali- fications so that he might obtain the approval and endorsement of the Bar. He admits that he sought thereby to deceive the members of the Cleveland Bar Association. This act was done as a lawyer who sought elevation to the Bench. It was done before he became a Judge. It could not have been a judicial act. It also carried deceit and deception to his associates in the law and to the people. It was untrue and unethical and involved misconduct and unprofessional conduct in office involving moral turpitude.

We have pursued the authorities for like situations. We find none and none are necessary. The judgment is affirmed.

LEMERT & MONTGOMERY, JJ., concur in judgment.