93 So.2d 601 (1957)
In re INVESTIGATION of a CIRCUIT JUDGE of the ELEVENTH JUDICIAL CIRCUIT of Florida.
Supreme Court of Florida, En Banc.
February 27, 1957.
*602 Richard H. Hunt, Miami, for petitioner.
Francis P. Conroy and Jack F. Wayman, Jacksonville, for The Florida Bar, respondent.
TERRELL, Chief Justice.
Article XI, Integration Rule of The Florida Bar, 31 F.S.A., will hereinafter be referred to as the Integration Rule, and Board of Governors of The Florida Bar will hereinafter be referred to as the Board of Governors. Pursuant to the Integration Rule the Board of Governors subpoenaed petitioner to appear before it on the 15th day of December, 1956, 9:30 a.m., at the Gables Room of the Key Biscayne Hotel in the City of Miami to then and there testify as to certain charges for the purpose of determining whether or not there exists probable cause that the said petitioner is guilty of unprofessional conduct in violation of subd. 2, Article XI, Integration Rule, Canon 29 of the Canons of Ethics Governing Attorneys and the Canons of Ethics Governing Judges, 31 F.S.A., both of which were adopted by the Supreme Court of Florida January 27, 1941.
December 10, 1956, petitioner moved this Court to quash said subpoena, to enter an order declaring the Board of Governors to be without jurisdiction to apply or enforce the disciplinary provisions of the Integration Rule against him in his status as Circuit Judge, and in and by said order quashing said subpoena so issued and served upon petitioner and his wife, suppress and invalidate the notice of hearing dated October 4, 1956. Petition further prayed that in the event this Court did not determine the issues presented by said petition prior to December 15, that it enter its order commanding the Board of Governors to desist from further proceedings against petitioner pending determination of the questions raised in the cause. Said petition was heard December 12, 1956, supersedeas was denied and the case was set for hearing on the merits before this Court en banc January 9, 1957.
On the merits petitioner contends that the Integration Rule confers no authority upon The Florida Bar or its Board of Governors to challenge the judicial conduct *603 of petitioner or to discipline him as a Circuit Judge for unprofessional conduct.
The primary support for this contention is Section 29, Article III of the Constitution, F.S.A., particularly the latter part thereof reading as follows: "The Governor, Administrative officers of the Executive Department, Justices of the Supreme Court, and Judges of the Circuit Court shall be liable to impeachment for any misdemeanor in office, but judgment in such cases shall extend only to removal from office and disqualification to hold any office of honor, trust or profit under the State; but the party convicted or acquitted shall nevertheless be liable to indictment, trial and punishment according to law."
The following provisions of the statutes and Constitution petitioner says contain secondary support for his contention: (1) Section 1, Article V of the Constitution relating to co-equal origin of Circuit and Supreme Courts: (2) Section 5, Article V of the Constitution clothing the Supreme Court with appellate jurisdiction in causes emanating from the Circuit Courts, as well as jurisdiction to issue designated extraordinary writs; Section 11, Article V of the Constitution clothing Circuit Courts with exclusive original jurisdiction in certain matters including intermediate appellate functions; (3) under Section 6, Article V of the Constitution Circuit Judges may be called to sit on the Supreme Court in case a Justice thereof is disqualified or otherwise disabled to sit. This provision is implemented by Section 25.08, Florida Statutes, F.S.A., result of which Circuit Judges serve as associate justices of the Supreme Court; (4) Section 25.03, Florida Statutes, F.S.A., authorizes the Supreme Court to promulgate rules relating to pleading and practice for all courts in the state but it does not interfere with the internal government of the Circuit Courts. The real purpose of these secondary supports for petitioner's contention is to show the separate and independent origin and functions of Circuit and Supreme Court and call attention to the reason why Supreme Court and Circuit Judges with the Governor and administrative officers of the Executive Department were subject to impeachment while all others were subject to removal by the Governor on consent of the Senate.
The Integration Rule, says petitioner, was designed to promote high standards of justice, to improve its administration and has exclusive application to persons admitted to and who are engaged in the practice of law, that a Circuit Judge or Judge of any constitutional court, being prohibited from practicing law during his tenure of office and subject to removal from office by the sole power of impeachment, is not an integrated lawyer and may not be disciplined, proceeded against or removed from office in any manner other than impeachment. In support of this contention petitioner points out that the Integration Rule was provided to "govern the conduct of members of The Florida Bar in their capacity as attorneys and shall govern all proceedings for discipline of such members." It also provides that membership in the bar shall be limited to persons admitted to practice law in Florida, and that no person shall engage in the practice of law unless he is "an active member of The Florida Bar" in good standing, that a Circuit Judge in Florida is not permitted to practice law and consequently cannot be an active member of the bar and cannot qualify as a member of The Florida Bar in the capacity of attorney. See Perry v. Bush, 46 Fla. 242, 35 So. 225.
Inspection of applicable provision of the Constitution discloses that judgment in case of impeachment consists only in removal from office and disqualification to hold any office of honor, trust or profit under the state but the party convicted or acquitted shall be subject to indictment, trial and punishment according to law. The House of Representatives is clothed with the sole power to impeach and all impeachments are tried by the Senate. *604 Since the House of Representatives is clothed with the sole power of impeachment, it necessarily follows that it has the power to determine whether the charges brought against one amount to a "misdemeanor in office" as contemplated by the Constitution. It matters not what charge may be lodged against a judge, to be ground for impeachment it must amount to "misdemeanor in office." Is "misdemeanor in office" bounded by the definition of misdemeanor used in the statute or at common law or may it include breach of judicial duty or other impropriety in office? A bill of particulars, or list of the charges against petitioner, is attached to petition but they will be discussed later so we will make no further reference to them at this time.
The law is well settled that when a judge is regularly admitted to practice law and is later elected or appointed and is acting as circuit judge, whatever right as attorney or counselor at law he may have been clothed with by virtue of admission to the bar, and whatever may have been his eligibility to do so was held in suspension during his incumbency on the court and he could not exercise the privilege during the time he held such office. Perry v. Bush, supra; State Bar of California v. Superior Court in and for Los Angeles County, 207 Cal. 323, 278 P. 432; In re Silkman, 88 App.Div. 102, 84 N.Y.S. 1025, 1027; Chambers v. Central Committee of the Oklahoma Bar Ass'n, 203 Okla. 583, 224 P.2d 583. The same cases also approve the doctrine that where the constitution creates an office, fixes its term and provides upon what conditions the incumbent may be removed before the expiration of his term, it is beyond the power of the legislature or any other authority to remove or suspend such officer in any manner than that provided by the constitution. Falloon v. Clark, 61 Kan. 121, 58 P. 990; Lowe v. Com., 3 Metc., Ky., 237; Throop, Pub.Off., Section 341; State ex rel. Holmes v. Wiltz, 11 La. Ann. 439; State ex rel. Robinson v. McNeely, 24 La. Ann. 19; Brown v. Grover, 6 Bush, Ky., 1; Page v. Hardin, 8 B.Mon., Ky., 648; Mechem, Pub.Off., Section 457.
In re Jones, 202 La. 729, 12 So.2d 795, the Louisiana Supreme Court reasoned that since the judge was subject to removal on constitutional grounds exclusively, the Bar of Louisiana had no authority to proceed against him under disciplinary rules governing lawyers. See also In re Meraux, 202 La. 736, 12 So.2d 798, 800, where, among other things, it was held that the official conduct of public officers is not subject to review in disbarment proceedings for what they do officially is not done in the capacity of attorneys at law but by virtue of their office. In re Meraux and cases cited therein are enlightening but not necessarily controlling on the question presented here.
In the case of In re Strahl, 201 App. Div. 729, 195 N.Y.S. 385, the Court approved the majority rule and questioned the wisdom, propriety or the power of the court to pronounce against a judge on the bench punishment that the law provides for misconduct as a lawyer. The case In re New Jersey State Bar Ass'n, 114 N.J. Eq. 261, 168 A. 794, held in effect that when one holds a civil office under the Constitution and is subject to impeachment, he is not subject to judicial inquisition by another arm of the government. In Chambers v. Central Committee of the Oklahoma Bar Ass'n, supra, the Bar Association contended that it was authorized to accuse and try any state or federal judge guilty of misconduct on the bench. In response to this contention, the Court said that the bar's position overlooked the fact that any such judge is not presently an attorney at law and that in Soda v. Marriott, 130 Cal. App. 589, 20 P.2d 758, it was pointed out that one elevated to the bench is no longer an attorney at law, that a judge is precluded from being an attorney at law so long as he holds the judicial position. In the case of In re McGarry, 380 Ill. 359, 44 N.E.2d 7, among other things, the Court observed that it is clear that disciplinary *605 proceedings may not be converted into a review of the manner in which a judicial officer chooses to carry on his official duties.
Respondent, The Florida Bar, admits that it has no jurisdiction to discipline a Circuit Judge but contends that it does have jurisdiction to discipline a member of The Florida Bar for unprofessional conduct despite the fact that he has become a Circuit Judge.
This contention, says respondent, is supported by the fact that subd. 1, Article II, Integration Rule, provides that "all persons licensed to practice law in this state shall be active members of The Florida Bar immediately upon issuance of license to practice by this Court." Weston v. Board of Governors of State Bar, 177 Okla. 467, 61 P.2d 229. Respondent also supports its contention with In re McGarry, 380 Ill. 359, 44 N.E.2d 7, 9, 10, 12; 27 Minn.Law Rev., Feb. 1943, page 317; Copland v. Newcomb, 66 Ohio App. 304, 33 N.E.2d 857; In re Spriggs, 36 Ariz. 262, 284 P. 521, 522, 523; In re Burton, 67 Utah 118, 246 P. 188, and cases cited therein.
It is true that the last cited case approved the following rule which supports respondent's contention:
"We hold, therefore, that where a judicial officer who is a member of the bar of this court commits an act while he is such judicial officer which in the ordinary attorney would be ground for disbarment, his office affords him no protection from such proceedings  leaving expressly undecided the question of the effect of such disbarment upon his official position."
It is perfectly apparent that the cases relied on by respondent draw a distinction between the official and professional conduct of an attorney and hold that when a judicial officer commits acts which if committed by an attorney would be ground for disbarment, his office would afford him no protection. At first blush, these cases reveal a split of authority on the question we are concerned with at this time, but weighed in the light of the constitutional provisions and the factual conditions from which they emanate, they are readily explainable and do not rule the question here.
The fact that the pertinent part of our Constitution, Section 29, Article III, limits impeachment to the Governor, the Cabinet (administrative officers of the Executive Department), Justices of the Supreme Court and Judges of the Circuit Courts is very significant. The Governor singly, or with the assistance of the Cabinet, administers or executes every law, statutory or constitutional, of statewide application and in many instances of county or district application. The Supreme Court and Circuit Judges interpret these laws where question is raised as to their meaning and guide the administrative officers in their application. The independence of the Executive and Judicial Departments would certainly contemplate that if their actions are to be questioned and reviewed, it should not be by those whom they direct or over whose conduct they have supervision but by the people or representatives of the people to whom they owe allegiance. The independence of the Executive and Judicial Departments are safe-guarded in that the House has the sole power of impeachment and the Senate is vested with the sole power to try impeachments. As to independence of departments see Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527, and McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580.
Under Section 29, Article III of the Constitution, impeachment is imposed only for "misdemeanor in office." Misdemeanor in office as ground for impeachment has a much broader coverage than the common law misdemeanor as usually defined and applied in criminal procedure. As applied to impeachment, *606 "misdemeanor in office" may include any act involving moral turpitude which is contrary to justice, honesty, principles, or good morals, if performed by virtue or authority of office. "Misdemeanor in office" is synonymous with misconduct in office and is broad enough to embrace any wilful malfeasance, misfeasance, or nonfeasance in office. It may not necessarily imply corruption or criminal intent. 40 C.J., Misconduct, p. 1221; 58 C.J.S., p. 818; Yoe v. Hoffman, 61 Kan. 265, 59 P. 351; Reid v. Superior Court of Trinity County, 44 Cal. App. 349, 186 P. 634; Stanley v. Jones, 197 La. 627, 2 So.2d 45. In Words and Phrases, citing Yoe v. Hoffman, supra, it was said that the phrase "Misdemeanor In Office," when referring to impeachment should be applied in the parliamentary sense and when so applied it means misconduct in office. Something which amounts to a breach of the conditions tacitly annexed to the office, and includes any wrongful official act or omission to perform an official duty.
In Stanley v. Jones, supra [197 La. 627, 2 So.2d 51], it was held that "misdemeanor in office" within the constitutional provision that all state and district officers shall be liable to impeachment for high crimes and misdemeanors in office, LSA-Const. Art. 9, § 1, means any misconduct in office. In State ex rel. Henson v. Sheppard, 192 Mo. 497, 91 S.W. 477, 480, 482, applying a statute providing that any clerk who shall knowingly and wilfully do any act contrary to the duties of his office, or shall knowingly and wilfully fail to perform any act or duty required of him by law, he shall be deemed guilty of a misdemeanor in office authorizing his removal on information that he has been guilty of a "misdemeanor in office" V.A.M.S. § 51.270, but said the Court, a Circuit Judge was without jurisdiction to remove him [Clerk of the Circuit Court, account of his having been informed against for murder, wholly disconnected with his office].
This Court is committed to the doctrine that where the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Weinberger v. Board of Public Instruction of St. Johns County, 93 Fla. 470, 112 So. 253; Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876; Amos v. Matthews, 99 Fla. 1, 126 So. 308; State ex rel. Ellars v. Board of County Commissioners of Orange County, 147 Fla. 278, 3 So.2d 360; Thomas v. State ex rel. Cobb, Fla. 1952, 58 So.2d 173, 34 A.L.R.2d 140. Here the Constitution provides that one impeached for "misdemeanor in office" may be removed from office and disqualified to hold any office of honor, trust or profit under the state. Whether convicted or acquitted as result of impeachment the party so acquitted or convicted is liable to indictment, trial and punishment according to law. Since a Circuit Judge must be twenty-five years of age and an attorney at law, Section 3, Article V, Constitution, and the impeachment strips him of his office only, he is still an attorney at law and may be subject to discipline by The Bar but not until he is found guilty in an impeachment proceeding or until his tenure as judge ends.
This is true because (1) under the scope of impeachment for "misdemeanor in office," as applied by the weight of authority pointed out in this opinion, some, if not all, the charges against petitioner as detailed in his petition might subject him to impeachment, depending on the showing made before the House of Representatives when sitting to consider impeachment charges; (2) impeachment charges concluded, whether convicted or acquitted, petitioner would still be an attorney at law subject to prosecution and punishment according to law because if impeachment results in conviction, the one convicted is merely removed from office while if he is acquitted or convicted, there may or may not be shown to exist a basis for prosecution and punishment in a court of law; (3) respondent *607 contends that petitioner should be disciplined for unprofessional conduct as distinguished from alleged official misconduct as a judge. We do not think it proper to determine at this time whether the charges against petitioner constitute a "misdemeanor in office"; that will be determined by the House of Representatives if impeachment proceedings are brought. Eight charges are laid against petitioner; they are broad in scope but how many of them may constitute a "misdemeanor in office" in the judgment of the House of Representatives it would not be proper for us to say at this time.
We have examined the cases relied on by both petitioner and respondent, including the criticisms of them by each. They present a variety of view on the main question presented, but we are convinced that this variety of view arises from the difference in language and application of the pertinent constitutional and statutory provisions relating to impeachment and removal from office and not otherwise. In some jurisdictions like Ohio it appears that they have statutory or other provisions authorizing prompt removal of all officers for any misconduct involving moral turpitude or for other causes provided by law, upon complaint and hearing such method of removal to be in addition to impeachment or other method of removal authorized by the Constitution.
In this state, county and some other officers not subject to impeachment may be removed in a somewhat similar manner, but such removal must be reported to the Senate for investigation and concurrence. If the Senate refuses to concur, the suspended officer is automatically reinstated and his compensation lost during suspension is restored. There is no summary method provided in this state for removing an officer subject to impeachment. It may be admitted that impeachment is a slow and tedious process but it is the only method provided by the law of this state and we are bound by it. It is our duty to interpret the law as given us by the people in the Constitution or by the Legislature. We are not permitted to substitute judicial cerebration for law or that which we think the law should be and command that it be enforced.
Elsewhere in this opinion we called attention to In re Burton, 67 Utah 118, 246 P. 188, and other cases approving the rule that where a judicial officer who is a member of the bar commits acts which if committed as attorney would be grounds for disbarment, his official position would afford him no protection in a disciplinary proceeding that may result in disbarment. Respondent contends that this should be the rule in Florida but we think not because, as heretofore pointed out, the right of an attorney to practice law in Florida is "suspended and continues to be suspended so long as he occupies the official position of Circuit Judge." The reason being that the "rights, duties, privileges and functions of the office of an attorney at law, counselor, or advocate, are so inherently incompatible with the high official functions of a judge of one of our Circuit Courts, with their vast range of jurisdiction, both original and appellate, that express inhibitory legislation on the subject would seem to be superfluous, and work of supererogation." After all is said the law of the forum controls. Whether convicted or acquitted as result of impeachment the one so charged is subject to be indicted, tried and punished according to law. If trial and punishment for infractions of state law may follow impeachment it would seem that discipline for infractions of the Integration Rule would be permitted and should take the same course.
This is a somewhat extended resume of the legal aspect of the question presented  may a Circuit Judge in this state be disciplined under the Integration Rule? All we have said may be summarized in this: Circuit Judges in Florida are subject to impeachment under Section 29, Article III of the Constitution. Impeachment may be for any "misdemeanor in office" which appears *608 to cover every species of official wrong. The Integration Rule was designed to discipline for unprofessional conduct. Any wrongdoing committed by a public official in an official capacity may or may not be classified as "unprofessional conduct" depending on the nature of the alleged wrong. Respondent admits this but says the inherent power of this Court authorizes it to discipline a Circuit Judge, he being an attorney despite his being subject to impeachment.
We do not think this can be true because the Constitution clearly contemplates that impeachment proceedings should first be exercised since they are imposed for official wrong and the Circuit Judge's right to practice law is suspended while he is on the bench. Official wrong and unprofessional conduct are in many respects entirely different and call for different treatment. At any rate, disciplinary proceedings cannot be leveled at a Circuit Judge who is charged with official wrong until after his conviction in an impeachment proceeding. If impeachment proceedings result in conviction and removal from office, the Judge removed would automatically resume his status as attorney at law subject to be disciplined under the Integration Rule provided he has committed acts of unprofessional conduct of such nature as to subject him to discipline by The Bar.
Petitioner has raised the point that a Circuit Judge is not bound to respond to a witness subpoena which is issued by the Board of Governors in the exercise of its disciplinary functions. We do not consider that he is entitled to claim such a broad exemption. A judge is not excused from responding to a subpoena when The Bar within the orbit of its authority is conducting an investigation into the conduct of a lawyer or any other proper matter upon which information held by the judge can throw light. If such a hearing develops into an investigation of the judge himself, he then, of course, may exercise his constitutional right against such investigation as announced herein.
What we have here said with reference to the authority of the Integrated Bar to discipline one holding the office of Circuit Judge prior to conviction in an impeachment proceeding is in actuality a recognition of a limitation on our own authority. In disciplinary matters the Board of Governors of the Integrated Bar serves merely as an adjunct or administrative agency of this Court with authority to make recommendations. We deem it appropriate in this instance to add that the officials and members of the Board of Governors of The Bar have throughout the matter conducted themselves with great credit to the profession. They have proceeded under difficult circumstances with the highest degree of integrity, patience and sincerity. For this they are commended.
The petition is granted and respondent is enjoined from further proceedings against petitioner until further order of this Court.
It is so ordered.
HOBSON, ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., not participating because of illness.